## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DJRJ, LLC, an Oklahoma limited liability company; DJRJ CORPORATE, LLC, an Oklahoma limited liability company; and DJRJ ENTERPRISES, LLC, an Oklahoma limited liability company, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-21-GKF-FHM |
| | ) | |
| U-SWIRL, INC., a Nevada corporation; and ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Delaware corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court are the Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Dkt. #14, 26] and the Motions to Transfer to the District of Colorado Pursuant to 28 U.S.C. § 1404 [Dkt. #15, 27] of defendants Rocky Mountain Chocolate Factory, Inc., and U-Swirl, Inc. ("U-Swirl").

This case arises from a dispute over a contract between U-Swirl and plaintiffs DJRJ, LLC, DJRJ Corporate, LLC, and DJRJ Enterprises, LLC (collectively, "DJRJ"), formerly known as CherryBerry, LLC, CherryBerry Corporate, LLC, and CherryBerry Enterprises, LLC (collectively, "CherryBerry"), respectively. As part of the agreement, U-Swirl purchased a substantial portion of CherryBerry's assets in exchange for $4.25 million and four (4) million shares of U-Swirl common stock. The contract, finalized in January 2014, required DJRJ to hold the U-Swirl stock for one year, after which time it could sell the stock for a guaranteed return of

fifty cents per share.  In particular, U-Swirl agreed that it would pay the difference if DJRJ sold the stock for less than that amount.

In the summer of 2015, DJRJ sold over half a million shares of U-Swirl stock for less than fifty cents per share.  DJRJ notified U-Swirl of the deficiency and sought a shortfall payment of approximately $200,000.  U-Swirl refused to make the payment and, shortly thereafter, filed suit against DJRJ in Colorado, alleging a claim of stock manipulation.  DJRJ counterclaimed against U-Swirl for breach of contract and filed a third party complaint against Rocky Mountain Chocolate Factory, Inc., alleging that it was U-Swirl's alter ego.

In December 2015, U-Swirl dismissed its claim in the Colorado litigation.  DJRJ did the same approximately one month later and, on that same day, refiled its claims in this court.  The defendants now request that the court either dismiss the present action for lack of personal jurisdiction and improper venue or, alternatively, transfer the case to the United States District Court for the District of Colorado.  For the reasons set forth in this Opinion and Order, the defendants' motions are denied.

## I.   BACKGROUND

### A.  *The Parties*

DJRJ is comprised of three Oklahoma limited liability companies, all with their principal place of business in Tulsa, Oklahoma.  Each entity is comprised of two members—Dallas and Robyn Jones—both of whom are Oklahoma citizens.  Prior to the contract at issue, DJRJ was an owner and franchisor of CherryBerry frozen yogurt restaurants, six of which were and still are located in Oklahoma.  Of those six restaurants, five are owned by franchisees, and the other is currently owned by U-Swirl.

U-Swirl is a publicly-traded Nevada corporation headquartered in Durango, Colorado.  It owns and franchises several frozen yogurt cafes across the United States.  There are no U-Swirl franchises in Oklahoma.

Rocky Mountain Chocolate Factory, Inc., ("RMCF-Delaware") is a publicly-traded Delaware corporation headquartered in Durango, Colorado.  RMCF-Delaware was incorporated in March 2015 and is a holding company, owning 100 percent of a Colorado corporation also entitled Rocky Mountain Chocolate Factory, Inc. ("RMCF-Colorado").  At the time of its incorporation, RMCF-Delaware had the same directors and executive officers as RMCF-Colorado.

RMCF-Colorado is headquartered in Durango, Colorado, and is an international franchisor, confectionary manufacturer, and retail operator.  It is affiliated with 368 stores, all but three of which are owned and operated by franchisees.  Although two of the company's franchise stores are located in Oklahoma, neither Rocky Mountain entity owns property in Oklahoma or employs any workers residing in the state.  RMCF-Colorado is not currently a party in this case, although plaintiffs recently filed a motion to join it as a defendant [*see* Dkt. #48].

In January 2013, RMCF-Colorado acquired a majority interest in U-Swirl.  By February 2015, that interest was down to thirty-nine (39) percent.  Today, RMCF-Colorado continues to hold a minority interest in U-Swirl, which is deemed a subsidiary of RMCF-Colorado for financial reporting purposes.

### B.  The Contract at Issue

U-Swirl first approached the plaintiffs about purchasing CherryBerry's assets in early 2013.  In January 2013, a U-Swirl representative contacted Dallas Jones at his office in Broken Arrow, Oklahoma, with an offer to purchase CherryBerry's franchising, licensing, and other

related assets.  The two companies negotiated the sale over the next twelve months.  During this time, the parties often negotiated via email or telephone with occasional in-person meetings in Denver and Tulsa.

Around this time, U-Swirl sought and ultimately obtained a loan from RMCF-Colorado to finance the transaction.  Based on its involvement, officials from RMCF-Colorado were often present during negotiations between U-Swirl and CherryBerry.  In July 2013, the Joneses traveled to Denver to meet with executives from RMCF-Colorado about financing the transaction.  One month later, officials from U-Swirl and RMCF-Colorado traveled to Tulsa for a full day of meetings and negotiations with CherryBerry representatives.  Finally, before ultimately agreeing to the loan, RMCF-Colorado sent a team of accountants to Tulsa to review CherryBerry's books and records.

After several months of negotiations, U-Swirl and CherryBerry reached an agreement which the parties finalized on January 17, 2014.  As part of the agreement, U-Swirl purchased a substantial portion of CherryBerry's assets in exchange for $4.25 million and four (4) million shares of U-Swirl common stock.  The contract required DJRJ to hold the U-Swirl stock for one year, after which time it could sell the stock for a guaranteed return of fifty cents per share.  Specifically, U-Swirl agreed that it would pay the difference if DJRJ sold the stock for less than fifty cents per share on the OTCQB exchange.  Before selling any stock, DJRJ was required to offer the shares first to U-Swirl and then to RMCF-Colorado pursuant to a right of first refusal. The parties agreed that Colorado law would govern the contract.

### C.  Alleged Breach

In the summer of 2015, DJRJ notified U-Swirl and RMCF-Colorado of its intent to sell approximately half a million shares of U-Swirl stock.  After neither company elected to purchase

the shares, DJRJ sold the stock at prices ranging from 7.27 cents to 25.2 cents per share.  DJRJ notified U-Swirl of the deficiency and sought a shortfall payment of approximately $200,000.  U-Swirl refused to make the payment.  During this time, all decisions by and communications between the parties were made from and/or directed toward each party's respective headquarters.

### D.  Procedural History

In August 2015, U-Swirl filed suit against CherryBerry for stock manipulation in Colorado state court.  After removing the case to federal court, DJRJ counterclaimed against U-Swirl for breach of contract and filed a third party complaint against RMCF-Colorado, asserting that it was U-Swirl's alter ego.[1]  In December 2015, U-Swirl dismissed its claim in the Colorado litigation.  DJRJ did the same approximately one month later and, on that same day, refiled its claims in this court.  In this case, however, DJRJ named RMCF-Delaware, instead of RMCF-Colorado, as the defendant on its alter ego claim.[2]

On the day this case was filed, U-Swirl and RMCF-Delaware each filed separate lawsuits against DJRJ in the United States District Court for the District of Colorado.[3]  In its Colorado suit, U-Swirl reasserts its stock manipulation claim against DJRJ, while RMCF-Delaware's Colorado suit seeks a declaration that it is not the alter ego of U-Swirl and owes no debts or obligations to DJRJ.

---

[1] *See U-Swirl, Inc., v. DJRJ Enterprises, LLC*, No. 15-CV-2147-WJM-KLM (D. Colo.).

[2] As previously mentioned, DJRJ has since moved to add RMCF-Colorado as a defendant.  [*See* Dkt. #48].  That motion is awaiting a response from RMCF-Delaware.

[3] *See Rock Mountain Chocolate Factory Inc. v. DJRJ, LLC*, 16-CV-87-WJM-MEH (D. Colo.); *U-Swirl, Inc., v. DJRJ Enterprises, LLC*, No. 16-CV-89-CBS (D. Colo.).

## II.  DISCUSSION

Defendants U-Swirl and RMCF-Delaware move to dismiss this case for lack of personal jurisdiction and improper venue and, alternatively, to transfer the case to the District of Colorado.  The court considers these motions in turn.

### A.  *Personal Jurisdiction*

When contested, the plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant.  *See AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008).  "In the preliminary stages of the litigation, however, that burden is light."  *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).  Where, as here, the court "considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. "  *AST Sports Sci., Inc.*, 514 F.3d at 1057.  "The plaintiff may meet this burden by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (internal quotation marks omitted).  At this stage, the court accepts as true any uncontroverted allegations in the complaint and resolves all factual disputes in the plaintiff's favor.  *See id.* Pretrial resolution of jurisdictional disputes, however, is not always possible.  *See Safety Techs., L.C. v. LG Techs., LTEE*, No. 98-2555-JWL, 2000 WL 1585631, at *3 (D. Kan. Oct. 11, 2000). "One deviation from this procedure is in the case where the issue of jurisdiction is dependent upon a decision on the merits."  *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965).  In that situation, the Tenth Circuit has instructed that courts "should determine jurisdiction by proceeding to a decision on the merits."  *See id.*

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012).  "Where, as in Oklahoma, the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).  "The Due Process Clause . . . permits personal jurisdiction over a defendant in any State with which the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (alteration omitted).  A defendant's contacts with the forum "may give rise to personal jurisdiction over [the] defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." *Shrader*, 633 F.3d at 1239.

Here, DJRJ focuses mainly on specific jurisdiction.[4]  The court, therefore, limits its analysis accordingly.  A court may exercise specific jurisdiction over a defendant if (1) "the defendant purposefully directed its activities at residents of the forum state," (2) "the plaintiff's injury arose from those purposefully directed activities," and (3) "exercising jurisdiction [does not] offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher,* 722 F.3d 1257, 1264 (10th Cir. 2013); *accord Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Grp.*, No. 13-CV-762-JED-PJC, 2014 WL 3891267, at *3 (N.D. Okla. Aug. 7, 2014) .  Because the defendants' contacts with the forum differ, the court addresses their motions separately.

---

[4] DJRJ briefly asserts that the court can exercise general jurisdiction over U-Swirl.  Because the court determines that specific jurisdiction over the defendant is proper, the court need not address this argument.

1. <u>U-Swirl</u>

The court first addresses whether it has personal jurisdiction over U-Swirl.  U-Swirl's contact with the forum is comprised primarily of its contractual relationship with DJRJ.  As a general matter, "[a] contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004).  Parties, however, "who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).  "In a contract case, relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"  *Benton*, 375 F.3d at 1077 (quoting *Burger King*, 471 U.S. at 479).

Here, DJRJ contends that its contract with U-Swirl creates a continuing relationship between the companies sufficient to render U-Swirl subject to the forum state's jurisdiction.  In particular, plaintiffs points to the fact that U-Swirl approached DJRJ about the transaction, that the contract was partially negotiated in Oklahoma, and that the contract imposes continuing obligations between the two companies.  In response, U-Swirl submits that the parties' agreement is precisely the sort of one-off transaction insufficient to establish minimum contacts with the forum.

The court agrees with DJRJ.  U-Swirl reached out to DJRJ, in Oklahoma, about the possibility of purchasing CherryBerry's assets.  The two companies negotiated over the sale for

nearly the entirety of 2013.[5]  During this time, the parties often negotiated via email or telephone with occasional in-person meetings in Denver and Tulsa.[6]  The contract they entered into established a set of continuing obligations between the companies regarding any future sale of U-Swirl stock by DJRJ, and the dispute at issue here arose from U-Swirl's alleged failure to perform one of those obligations.  Based on these facts, the court finds that U-Swirl purposefully directed its activities at the forum state and that DJRJ's alleged injury arose from those purposefully directed activities.

Having found minimum contacts, "the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271.  "Such cases are rare." *Id.* (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)).  To carry this burden, the defendant "must present a compelling case that the presence of some other considerations . . . render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.  In making this determination, courts consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the
> dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4)
> the interstate judicial system's interest in obtaining the most efficient resolution of

---

[5] *Cf. AST Sports Sci., Inc.*, 514 F.3d at 1059 (finding jurisdiction over out-of-state defendant where defendant approached forum-state plaintiff about a transaction "and then formed an ongoing business relationship to facilitate the same"); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (noting that soliciting business from a forum-state plaintiff "[w]hile not conclusive, . . . is itself some evidence suggesting purposeful availment" (internal quotation marks omitted)).

[6] *See Burger King*, 471 U.S. at 476 ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there"); *AST Sports Sci., Inc.*, 514 F.3d at 1059 ("Phone calls, letters, facsimiles, and emails provide additional evidence that the foreign defendant pursued a continuing business relationship with the plaintiff." (alterations omitted) (internal quotation marks omitted)); *Benton*, 375 F.3d at 1077 (noting that sending representatives to a state "in order to maintain and further [a] business relationship" is evidence of purposeful availment).

controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Newsome*, 722 F.3d at 1271 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998)).

Here, U-Swirl contends this case is one of those rare instances in which exercising jurisdiction over a defendant with minimum contacts in the forum would be unreasonable.  In making this argument, U-Swirl submits that litigating this case in Oklahoma would impose a significant burden on the company because all of its records and employees are in Colorado.  It further contends that a Colorado forum would provide the most efficient resolution of this dispute and that Oklahoma's interest in adjudicating the case is minimal given the contract's choice-of-law provision.  In response, DJRJ asserts that the circumstances noted by U-Swirl are not so compelling as to render jurisdiction unreasonable.

The court again agrees with DJRJ.  None of the previously recited factors, separately or in combination, weigh strongly in favor of dismissal.  As an initial matter, the travel costs of litigating in another state, without more, is ordinarily an insufficient burden to defeat personal jurisdiction.  *See Newsome*, 722 F.3d at 1273 ("[W]e see no particular burden simply in the travel from Alberta to Oklahoma that may be required as part of this lawsuit."); *see also Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (rejecting defendant's contention that the location of his records in another state rendered venue in Oklahoma inconvenient where "[d]efendant never attempted to explain, let alone substantiate, why th[o]se documents could not be sifted through (at his Florida offices) and the probative ones shipped at relatively minor cost to Oklahoma for trial").  This is particular true where, as here, such costs are small and will inevitably fall on one side or the other.  *See  Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1081 (10th Cir. 2008) ("As in any case in which the parties reside in different fora, one side must bear

the inconvenience of litigating 'on the road.'"). U-Swirl is headquartered in Durango, Colorado, approximately 337 miles southwest of Denver. At this distance, U-Swirl will incur travel costs regardless of whether the case is litigated in Tulsa or Denver. The incremental cost of litigating in Tulsa is not so burdensome as to defeat jurisdiction.

The other factors are largely inconclusive. As to the second factor, although Colorado law will govern the parties' contract, the plaintiffs are Oklahoma LLCs comprised of Oklahoma members. As such, this factor does not weigh heavily in favor of either party. *See Benton*, 375 F.3d at 1079. The third factor slightly favors jurisdiction. Although DJRJ would not be unfairly disadvantaged if forced to litigate in Colorado, Oklahoma certainly provides the company with a more convenient forum. *See Kendall v. Turn-Key Specialists, Inc.*, 911 F. Supp. 2d 1185, 1199 (N.D. Okla. 2012) (noting that the third factor favors jurisdiction, "to some extent," under such circumstances). The next factor—"whether the forum state is the most efficient place to litigate the dispute," *Pro Axess, Inc.*, 428 F.3d at 1281—weighs slightly in favor of dismissal, but not substantially so. Witnesses for the respective parties are located in both Oklahoma and Colorado, and while Colorado law will govern the parties' dispute, there is no indication that the legal issues involved are especially unique or complex. *See id.* (noting the relevance of these considerations). Finally, U-Swirl acknowledges that the fifth factor is neutral.

In sum, U-Swirl has not shown that this court's exercise of jurisdiction over the company would be so unreasonable as to violate traditional notions of fair play and substantial justice. Accordingly, U-Swirl's motion to dismiss for lack of personal jurisdiction is denied.

### 2. RMCF-Delaware

The court next considers whether it has personal jurisdiction over RMCF-Delaware. DJRJ does not contend that the court can exercise jurisdiction over RMCF-Delaware based on

the company's own actions.  Rather, it submits that U-Swirl is the alter ego of RMCF-Delaware and, consequently, that the court can exercise jurisdiction over the company based on U-Swirl's contacts with the forum.

As a general matter, "[j]urisdiction over any entity, if it exists, must arise out of the entity's contacts with the forum."  *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990).  Where, however, a parent corporation "completely controls" its subsidiary, "the latter's contacts with the forum may fairly be imputed or attributed to the former."  *Id.*; *accord Pro Axess, Inc.*, 428 F.3d at 1278.  "In order to establish jurisdiction under the alter-ego theory, there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily exercised by a parent corporation."  *Gilbert v. Sec. Fin. Corp. of Oklahoma*, 152 P.3d 165, 174 (Okla. 2006); *accord Indah v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011).

Here, DJRJ has offered evidence and alleged facts in support of its alter-ego theory.  Ordinarily, at this point, the court would proceed to evaluate whether the plaintiffs' evidence and uncontested allegations support jurisdiction over the defendant.  The court, however, cannot do so in this case.  As previously mentioned, DJRJ alleges an alter-ego action against RMCF-Delaware as a substantive claim.  Thus, "the issue of jurisdiction is dependent upon a decision on the merits."  *Schramm*, 352 F.2d at 149.  To avoid summarily deciding plaintiffs' alter ego claim, the court will postpone its resolution of the defendant's jurisdictional challenge until a decision on the merits.  *See id.*; *see also, e.g.*, *Harch Hyperbarics, Inc. v. Martinucci*, No. CIV.A. 09-7467, 2010 WL 4665923, at *4 (E.D. La. Nov. 9, 2010) (postponing jurisdictional determination where the issue of alter ego went "to both the question of personal jurisdiction and the merits of

- 12 -

Plaintiff's case"); *Dixie Aire Title Servs., Inc. v. SPW, L.L.C.*, No. CIV-07-0141-F, 2008 WL

570960, at *6 (W.D. Okla. Feb. 28, 2008) (same).

### B.  Venue

The court next considers the defendants' motion to dismiss for improper venue.  In a

diversity action, venue lies in

> (1) a judicial district where any defendant resides, . . . (2) a judicial district in
> which a substantial part of the events or omissions giving rise to the claim
> occurred, . . . or (3) if there is no district in which an action may otherwise be
> brought . . . , any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).  Here, the only potential basis for venue in this district is under

§ 1391(b)(2).  To determine whether venue is appropriate under this provision, a "court must

'examine the nature of the plaintiff's claims and the acts or omissions underlying those claims,'

and 'whether substantial events material to those claims occurred in the forum district.'"

*ConocoPhillips Co. v. Jump Oil Co.*, 948 F. Supp. 2d 1272, 1282 (N.D. Okla. 2013) (quoting

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010)).

In a breach of contract action, this will often require consideration of "where the contract was

negotiated or executed, where it was to be performed, and where the alleged breach occurred."

*Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1181 (D. Kan. 1998) (quoting *PI, Inc. v.

Quality Products, Inc.*, 907 F.Supp. 752 (S.D.N.Y. 1995)).  Notably, venue under § 1391(b)(2)

"is not limited to the district with the *most* substantial events or omissions."  *Employers Mut.

Cas. Co.*, 618 F.3d at 1165 (emphasis in original).  Rather, venue may be appropriate in multiple

judicial districts. *See id.*

Here, the contract at issue was negotiated in the Northern District of Oklahoma and the

District of Colorado and contemplated performance occurring in both districts.  Although U-

Swirl's alleged breach (refusing to pay a requested shortfall) occurred in Colorado, the circumstances triggering U-Swirl's duty to perform the allegedly breached obligation occurred in Tulsa, Oklahoma.  Under such circumstances, the court concludes that a substantial part of the events or omissions giving rise to DJRJ's claims occurred in this district.  Accordingly, the defendants' motions to dismiss for improper venue are denied.

### C.  Motion to Transfer

Lastly, the court considers the defendants' motions to transfer this case to the District of Colorado.  Under 28 U.S.C. § 1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought."  In considering such a motion, courts weigh the following discretionary factors:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co.*, 618 F.3d at 1167 (alteration omitted) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

The party moving for transfer bears the burden of showing that the existing forum is inconvenient.  *See Tex. Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir. 1967).  This burden is heavy.  *See id.*  "Unless the [previously recited] factors strongly favor transfer, 'the plaintiff's choice of forum should rarely be disturbed.'"  *Titsworth v. City of Muskogee*, No. 07-

CV-0576-CVE-SAJ, 2008 WL 112032, at *2 (N.D. Okla. Jan. 9, 2008) (quoting *Scheidt*, 956 F.2d at 965).

Here, the defendants contend that all factors favor transfer except for the fourth and seventh, which they concede are neutral.  The court considers these issues in turn.

### 1.   Plaintiff's Chosen Forum (Factor 1)

The first factor addresses the plaintiff's interest in preserving its chosen forum and, ordinarily, weighs heavily against transfer.  *See Employers Mut. Cas. Co.*, 618 F.3d at 1167.  In limited circumstances, however, courts will accord less weight to a plaintiff's choice of forum, such as when "the plaintiff does not reside in the district," or "where the facts giving rise to the lawsuit have no material relation or significant connection to the . . . chosen forum." *Id.* (internal quotation marks omitted).

Here, the defendants contend that the facts giving rise to this lawsuit have no significant connection to this district.  The court disagrees.  This case arises from a dispute over an asset purchase agreement involving three Oklahoma LLCs headquartered in Tulsa, Oklahoma.  The contract was partially negotiated and performed in this district.  These connections are not insignificant or immaterial.  The fact that DJRJ briefly pursued its present claims in Colorado (as a counterclaim and third party complaint) does not change this conclusion.  Accordingly, this factor weighs against transfer.

### 2.   Accessibility of Witnesses and Other Sources of Proof (Factor 2)

The second factor directs courts to consider the location of witnesses and other evidence. "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)" *Id.* at 1169 (internal quotation marks omitted).  To establish "inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality

of their testimony; and (3) show that any such witnesses [are] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *See id.* (alterations omitted) (internal quotation marks omitted).

Here, the defendants submit that the second factor favors transfer because most of the evidence and witnesses relevant to this case are located in Colorado.  With regard to witnesses, the defendants identify a number of employees and third-party witnesses, residing in Colorado, whose testimony will be material to their defense.  In response, DJRJ contends that defendants have made no showing that their witnesses are unwilling to come to trial, that their deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.

The court agrees with DJRJ.  The defendants have not shown that the witnesses at issue would be unwilling to appear for trial or that their deposition testimony would be unsatisfactory. The witnesses identified are all either employees of the defendants or attorneys or accountants representing RMCF-Delaware.  Given their close ties to the defendants, the court doubts that compulsory process would be necessary to ensure their appearance.  Because witnesses and evidence relevant to this case are located in both districts, the court finds that this factor is neutral.

### 3.   The Cost of Making the Necessary Proof (Factor 3)

The third factor requires consideration of the likely cost to each party of proving their case in the respective districts.  Here, the defendants assert that their witnesses and records are located primarily in Colorado and that the cost savings from litigating the case in that district would be substantial.  The court again disagrees.  Starting with their records, the defendants do not "explain, let alone substantiate, why [their records] could not be sifted through [in Colorado] and the probative ones shipped at relatively minor cost to Oklahoma for trial." *Scheidt*, 956 F.2d

at 965.  With regard to witnesses, most of the defendants' witnesses reside in Durango, Colorado.  As previously noted, the distance between Durango and Denver is significant and is such that the defendants will incur considerable travel costs regardless of where this case is litigated.  Although the defendants would likely save money if the case were transferred to Colorado, any such savings would be at the plaintiffs' expense.  Because shifting costs "from one side to the other . . . is not a permissible justification for a change of venue," *id.* at 966, the court finds that this factor is neutral.

### 4.   Relative Advantages and Obstacles to a Fair Trial (Factor 5)

RMCF-Delaware contends that this court's lack of compulsory process over critical third-party witnesses poses an obstacle to a fair trial.  For the reasons previously stated, the court disagrees.  There has been no showing that compulsory process would be necessary to ensure the appearance of these witnesses.  Accordingly, the court finds that this factor is neutral.

### 5.   Difficulties from Congested Dockets (Factor 6)

The sixth factor requires courts to consider the difficulties that may arise from congested dockets.  "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."  *Employers Mut. Cas. Co.*, 618 F.3d at 1169.  Here, these statistics sort out as follows:

|  | Colorado | Northern District of Oklahoma |
|---|---|---|
| Median Time to Disposition | 7.8 months | 10.7 months |
| Median Time to Trial | 27 months | 19.2 months (from 2010-11)[7] |
| Pending Cases Per Judge | 451 | 291 |
| Average Weighted Filings Per Judge | 574 | 321 |

---

[7] Since 2011, the Administrate Office's report has not included a median time to trial for the Northern District of Oklahoma.  Aside from this figure, all other information displayed in this table is from June 30, 2014, to June 30, 2015.

*See* Administrative Office of the United States Courts, Federal Court Management Statistics, *available at* http://www.uscourts.gov/file/18457/download (June 2015).  Although the District of Colorado has a shorter median time to disposition than this district (approximately 2.9 months), the other considerations all weigh against transfer.  Accordingly, the court finds that this factor is neutral.

### 6.   Advantage of Local Court Deciding Issues of Local Law (Factor 8)

The eighth factor directs courts to consider the advantages of having a local court decide issues of local law.  "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."  *Employers Mut. Cas. Co.*, 618 F.3d at 1170.  Here, Colorado law will likely govern most, if not all, of the substantive legal issues in this case.  There, however, is no indication that the legal issues involved are especially unique or complex.  *See Scheidt*, 956 F.2d at 966 (noting that the applicability of Florida law did not warrant a change of venue from Oklahoma to Florida where the legal issues involved were relatively simple).  Accordingly, this factor weighs slightly in favor of transfer.

### 7.   All Other Considerations (Factor 9)

The final factor directs courts to consider any other circumstance bearing on the relative convenience of the respective forums.  The defendants contend that this factor favors transferring the case to the District of Colorado because that court is already familiar with the case.  Although DJRJ briefly pursued its present claims in Colorado (as a counterclaim and third party complaint), the record from that case shows that the litigation never progressed past the pleading stage.  Indeed, the entire case, from filing to dismissal, lasted less than four months.  Such short-lived familiarity does not support a change of venue.

In sum, none of the previously recited factors, separately or in combination, weigh strongly in favor of transfer.  Accordingly, the defendants' motions to transfer this case to the District of Colorado are denied.

WHEREFORE, the defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Dkt. #14, 26] as well as their Motions to Transfer to the District of Colorado Pursuant to 28 U.S.C. § 1404 [Dkt. #15, 27] are denied.

IT IS SO ORDERED this 22nd day of April, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT